STATE OF MINNESOTA

IN SUPREME COURT

A23-0947

Court of Appeals                                                              Thissen, J.

State of Minnesota,

                       Respondent,

vs.                                                                 Filed: August 27, 2025
                                                                Office of Appellate Courts
Johnnie Lerma,

                       Appellant.

_____

Cathryn Middlebrook, Chief Appellate Public Defender, Saint Paul, Minnesota; and

Paul J. Maravigli, Special Assistant State Public Defender, Minneapolis, Minnesota, for appellant.

Keith Ellison, Attorney General, Saint Paul, Minnesota; and

Mary F. Moriarty, Hennepin County Attorney, Nicholas G. Kimball, Assistant County Attorney, Minneapolis, Minnesota, for respondent.

_____

The Double Jeopardy Clauses of the United States and Minnesota Constitutions do not bar retrial of a criminal defendant who requested and received a mistrial on all counts where the government did not induce, goad, or provoke the request for a mistrial.

Affirmed.

O P I N I O N

THISSEN, Justice.

The question in this case is whether the Double Jeopardy Clauses of the United States and Minnesota Constitutions prevent appellant Johnnie Lerma from being retried following a mistrial declared during jury deliberations. Since Lerma requested a mistrial, he must prove that the government—here, the district court judge—induced, goaded, or provoked him into requesting the mistrial to obtain relief. Because he cannot do so, double jeopardy does not bar his retrial, and we affirm the court of appeals.

**FACTS**

The State charged Lerma with two counts of first-degree criminal sexual conduct, Minnesota Statutes section 609.342, subdivisions 1(c)(ii), (d) (2024), third-degree criminal sexual conduct, section 609.344, subdivision 1(c) (2024), domestic assault, section 609.2242, subdivision 4 (2024), and threats of violence, section 609.713, subdivision 1 (2024). The case went to trial in May 2022.

The jury began its deliberations on May 25, 2022. On May 26, the jury submitted a question to the court, asking "[w]hat are the next steps if the jury cannot come to a unanimous decision for every count/charge?" After discussing the matter with the

2

attorneys, the district court told the jury to keep deliberating and that the court would reevaluate the potential deadlock the next day. The jury continued its deliberations that day and adjourned.

Overnight, a juror's spouse tested positive for COVID-19, though the juror did not. The juror informed the district court. On the morning of May 27, the district court and attorneys discussed the COVID-19 exposure in chambers.[1] On the record, but without the jury present, the district court explained that it was worried that continuing deliberations with a COVID-exposed juror could pressure the jurors into reaching a unanimous verdict to minimize exposure to the virus, a concern heightened by the jury's possible deadlock. The district court announced that it would end deliberations, take any verdicts the jury had reached, and declare a mistrial on any deadlocked counts.

The State had no objection to the plan. Lerma's lawyer stated that "[Lerma] wants me to ask for a complete mistrial on the entire case." The court responded:

> [I]t's a request that depending on what their—what their process or status is, it may be moot. It may be there's no verdict on any counts in which [case] I'll just declare a mistrial. If they have reached verdicts on some counts, I will take those verdicts over Mr. Lerma's objection.

The district court brought the jury in and explained the plan. Without identifying which counts she was referring to, the jury foreperson indicated that the jury had reached unanimous verdicts on three of the five counts, but said the verdict forms were not signed. The district court told the jury that it should adjourn to sign the verdict forms for the counts

---

[1] The parties made a record that the conversation took place, but there is no transcript of the conversation that occurred in chambers.

3

on which it had unanimous verdicts and the court would then declare a mistrial on any deadlocked counts.

In response, the jury foreperson asked what a mistrial was. The court explained:

> We can talk about this later, you know, but it's sometimes jurors can't reach unanimous decisions, right, and you may be at that point with those too [sic]. And the sense that I got . . . was that you were—the term that we use is deadlocked on those other two. You know, and if a jury is deadlocked, then the legal recourse is to simply start over with those two. But if there's a unanimous verdict on three, we can take the three and leave the other two for a later time, so that's where we're at.
>
> And like I said, my sense was that you were deadlocked yesterday, but sometimes that changes with further reflection. Not going to have you do that further reflection given the circumstances.

A different juror asked, "since it's not final yet . . . can I still change?" The district court responded, "[y]ou can. The verdict isn't final until it's signed by the foreperson after . . . polling everyone . . . . [S]o that's the point is to go to the courtroom next door and see if you still have a final verdict, and if you don't, you don't." That juror then asked what a mistrial was, and the district court explained it as "just starting over again" but with a different jury. The jury adjourned to sign the verdict forms at 10:03 a.m.

While the jury was out, the district court asked if there was anything for the record. Defense counsel said, "nothing for the record," but then the following exchange took place:

| | |
|---|---|
| Defense Counsel: | So they could re-deliberate those three? |
| The Court: | I'm not going to have them re-deliberate. If she changes her mind and says I'm not going to do this, for all the reasons we talked about, I'm not going to say, then keep going. That is not something that I believe is—I'm comfortable with. |
| Defense Counsel: | What if they come back and they say somebody—they go, I changed my mind on those other three? |
| The Court: | Well, then they changed their mind and it's a deadlocked jury on everything. |

4

| | |
|---|---|
| Defense Counsel: | That could happen, they can come in and say, you know what, I changed my mind even though we all decided those other three counts a day ago or something? |
| The Court: | Yeah. |
| Defense Counsel: | And that would be a deadlock there? |
| The Court: | Yes. |
| Defense Counsel: | Okay. |
| The Court: | If they don't have unanimous verdicts that are signed by the jury foreperson, they don't have unanimous verdicts. We will wait and see what they say. |
| Defense Counsel: | Okay. |

After about 10 minutes, the district court came back on the record and said it would bring the jury back in regardless of whether it had any unanimous verdicts in order to avoid additional deliberation. The jury reentered at 10:22 a.m., about 19 minutes after being dismissed, and announced it had no unanimous verdicts. The court then declared a mistrial on all counts and dismissed the jury. The court set a future hearing date to discuss how to move forward with the case. During this discussion, the district court told the attorneys they could "take inventory of where you're at, where you want to go, I'm not going to ask for any decisions at this point . . . ."

On January 27, 2023, Lerma moved to dismiss the refiled five-count complaint, arguing a retrial would violate the Double Jeopardy Clauses of the United States and Minnesota Constitutions.[2] In his written argument in support of the motion, Lerma explained that there are two bases for establishing double jeopardy when a mistrial is

---

[2] In June 2022, at the omnibus hearing for the second trial, the defense told the court it was planning to file a motion for dismissal based on double jeopardy.

5

declared—the absence of manifest necessity and government provocation.[3] At that time, Lerma did not assert that the district court lacked manifest necessity to declare the mistrial based on the potential pressure that knowledge of COVID-19 exposure placed on the jury to reach a verdict[4] nor that the district court's communication with the jury about the meaning and consequences of a mistrial were intended to provoke either Lerma's request for or consent to the mistrial. Rather, he argued that the district court's discussion with the jury—an event that occurred after Lerma requested a mistrial on all counts—created the deadlock on all counts and thus the "manifest necessity" for the mistrial. At the hearing on the motion, Lerma further claimed that the district court's communications to the jury about the meaning and consequences of a mistrial constituted structural error.

The district court denied the motion to dismiss, concluding that double jeopardy did not apply and there was no bar to retrial. Lerma appealed and the court of appeals affirmed. *State v. Lerma*, No. A23-0947, 2024 WL 3320657 (Minn. App. July 8, 2024). We granted Lerma's petition for review.

---

[3]  We explain these concepts in Part A below.

[4]  To be clear, in the district court Lerma did not dispute that manifest necessity to declare a mistrial existed based on the improper pressure COVID-19 exposure could place on jurors to reach a verdict. He did, however, raise this issue on appeal to the court of appeals and before us. Based on our resolution of the case, we need not and do not reach that issue.

6

**ANALYSIS**

Because his first trial ended in a mistrial, Lerma is set to receive a new trial on all charges against him. The fundamental question is whether double jeopardy has attached and bars the State from retrying Lerma.

Under both the United States and Minnesota Constitutions, a criminal defendant is protected from being tried twice for the same offense. U.S. Const. amend. V; Minn. Const. art. 1, § 7.[5] Jeopardy generally attaches when a jury is impaneled and sworn. *State v. McDonald*, 215 N.W.2d 607, 608–09 (Minn. 1974). But "[c]ircumstances may arise even after the jury has been impaneled and sworn in which the trial court may abort the proceedings and retry the defendant without violating the double jeopardy clause." *Id.* at 609. "When a mistrial has been declared, 'the conclusion that jeopardy has attached begins, rather than ends, the inquiry as to whether the Double Jeopardy Clause bars retrial.'" *State v. Long*, 562 N.W.2d 292, 296 (Minn. 1997) (quoting *Illinois v. Somerville*, 410 U.S. 458, 467 (1973)). We review the application of double jeopardy de novo. *State v. Gouleed*, 720 N.W.2d 794, 800 (Minn. 2006).

A.

Whether double jeopardy bars retrial following a mistrial declaration depends on whether the defendant consented or objected to the mistrial. *State v. Fuller*, 374 N.W.2d 722, 726 (Minn. 1985) (applying the standards for double jeopardy following a mistrial as

---

[5] Lerma does not argue that the double jeopardy standard under the Minnesota Constitution differs from the federal constitution. We have not resolved that issue and decline to do so here. *See State v. Fuller*, 374 N.W.2d 722, 726–27 (Minn. 1985); *see also State v. Large*, 607 N.W.2d 774, 778 n.2 (Minn. 2000).

7

outlined in *Oregon v. Kennedy*, 456 U.S. 667, 672 (1982)). If a court grants a mistrial over a defendant's objection, retrial can only occur if there was manifest necessity for terminating the first trial. *Id.* If, however, a defendant consents to a mistrial, double jeopardy does not bar retrial unless the government intentionally induced, goaded, or provoked the defendant into asking for the mistrial. *Id.* The focus in this latter circumstance is on the government actor's *intent*, not the existence of error (even error justifying a mistrial). *Id.* at 675–76 ("Prosecutorial conduct that might be viewed as harassment or overreaching, even if sufficient to justify a mistrial on defendant's motion, therefore, does not bar retrial absent intent on the part of the prosecutor to subvert the protections afforded by the Double Jeopardy Clause."). This higher standard is warranted because the defendant "has elected to terminate the proceedings against him" and cannot claim injustice on retrial unless the government's actions intentionally turned his "valued right to complete his trial before the first jury . . . [into] a hollow shell . . . ." *Id.* at 672, 673.

To begin, Lerma and the State agree that, after learning of a juror's COVID-19 exposure, Lerma requested and thereby consented to "a complete mistrial" on all five counts.[6] Accordingly, to successfully invoke double jeopardy, Lerma must prove the

---

[6] At the district court hearing on the motion to dismiss, Lerma's attorney originally denied that Lerma consented to the mistrial, instead asserting the attorney was "simply express[ing] what Mr. Lerma said" when he told the district court "[Lerma] wants me to ask for a complete mistrial on the entire case." Lerma has since abandoned this argument and agrees that he requested the mistrial.

district court *intentionally* provoked his request;[7] something Lerma admits[8]—and we agree—did not occur.

There is no evidence that the district court intended to goad Lerma into requesting a mistrial on all counts. Lerma identifies the district court's answers to jury questions about the legal definition and implications of a mistrial as the relevant error. But the district court's communications with the jury occurred *after* Lerma requested a mistrial on all counts. The assertion that this misconduct induced Lerma to request a mistrial is not sound.

First, the timing is wrong. When Lerma requested a "complete mistrial on the entire case," all the district court had done was decide that it was necessary to end deliberations. It is difficult to understand how conduct following a request for a mistrial could have provoked the request.[9] Second, the district court's comments were directly responsive to

[7]     Lerma limits his claim of government provocation to the district court's conduct; he does not claim that the prosecutor did anything to provoke his request for a mistrial.

[8]     Before this court, Lerma does not argue that the district court intentionally provoked his request for the mistrial. He not only forfeited this argument, *see State v. Powers*, 654 N.W.2d 667, 676 (Minn. 2003), but agreed at oral argument that there was no intentional provocation here.

[9]     We observe that in his arguments on this point, Lerma seemingly conflates two concepts. He focuses on answering whether the district court, through its post-request conduct, *provoked the mistrial*. That question is similar to the one we must answer— whether the State proved that a manifest necessity existed to grant the mistrial—in circumstances where the defendant objected to the mistrial. At this point in our analysis, however, we focus on the distinct question of whether, despite Lerma's affirmative request for a mistrial, double jeopardy should attach. In answering that question, we focus on whether the government intentionally *provoked the request* for a mistrial. Of course, government action before a defendant's request for a mistrial may be evidence of provocation. Here, however, no provocative government action occurred before Lerma requested the mistrial.

jurors' questions and we discern nothing to suggest that the district court's purpose in answering these questions was to intentionally goad Lerma into requesting a mistrial. Even if the answers the district court gave included information the jurors should not have had, they do not indicate an intent to "subvert the protections afforded by the Double Jeopardy Clause." *Id.* at 675–76. Because Lerma requested a mistrial on all five counts and the district court did not intentionally induce, provoke, or otherwise goad him into making that request, double jeopardy does not bar Lerma's retrial.

## B.

Lerma seeks to avoid this conclusion by asserting that either he withdrew his request for—and consent to—a mistrial or later events rendered his request and consent meaningless. If so, then Lerma need not prove intentional provocation; rather, the State would need to prove manifest necessity to declare the mistrial. Lerma offers five reasons we should determine that he either revoked his consent or preserved his objection to the mistrial. We conclude that none of these reasons is persuasive.

## 1.

First, Lerma incorrectly asserts the district court "denied" his mistrial request immediately after it was made, thus vitiating any consent Lerma may have given for a mistrial. We disagree with Lerma's characterization. While the district court suggested what it might do depending on the status of the jury's verdicts, its comments were conditional. The district court expressly stated that the motion "*may* be moot" depending on the jury's "process or status." The district court neither granted nor denied a mistrial before the jury returning verdicts on any count. *Cf. State v. Reed*, 737 N.W.2d 572, 589

10

(Minn. 2007) (determining that the district court reserving ruling on the admissibility of evidence was different from the court ruling on the admissibility of the evidence). Moreover, the district court ultimately *granted* Lerma's request. He got what he requested—"a complete mistrial on the entire case."[10]

2.

Second, Lerma argues that he made his mistrial request "premature[ly]" before he knew the jury had unanimously agreed on verdicts for three of the five counts. He claims the changed circumstances *implicitly* voided his request for a mistrial and that, because he did not affirmatively renew his request for a mistrial after the changed circumstance, he should be deemed not to have requested a mistrial.

Even if we were to conclude that a mistrial request may be deemed implicitly voided based on changed circumstances, we disagree that such circumstances exist in this case.[11]

---

[10]    The only request the district court even potentially denied—which was not expressly made—was for it to refuse to accept any final verdicts without knowing or asking the jury if they existed. As we discuss next, in Part B.2, whether verdicts existed is irrelevant to the request Lerma actually made—a mistrial on all counts; a request, we note again, that the district court ultimately granted.

We also observe one implication of Lerma's position is that, had the jury reached a final guilty verdict on some counts and the district court accepted those verdicts (denying Lerma's request for a mistrial on those counts), we would seemingly be required to consider any claims of mistrial as to those counts forfeited on appeal based on the district court's initial response to Lerma's request for "a complete mistrial on the entire case" and Lerma's failure to subsequently renew his objection.

[11]    We agree with Lerma that the situation before us is distinguishable from *State v. Hunter*, 815 N.W.2d 518, 521–22 (Minn. App. 2012), in which the court of appeals concluded that it was not clear error for a district court to determine a defendant "impliedly consented" to a mistrial when counsel failed to state a position one way or the other on the mistrial even though he had opportunity to object and knowledge of the State's intent to

11

When Lerma made his request for a mistrial on all five counts, he did not know whether the jury had reached a verdict on none, some, or all of the counts. He made his request knowing there was a possibility that the jury had reached a verdict on some or all of them. The jury foreperson's announcement that the jury had potentially reached verdicts on three counts did not change Lerma's circumstances such that we are compelled to deem his request for a mistrial withdrawn. If the announcement that the jury had possibly reached a verdict on some counts was significant to Lerma, he had the opportunity to explicitly withdraw his request for a mistrial or object to the mistrial. He did not do so.

3.

Third, Lerma notes that his attorney "expressed his concern about losing the unanimous verdicts" during discussion with the district court after the jury left to address the verdict forms. He claims the discussion constituted a withdrawal of his mistrial motion. We disagree.

Once the jurors left the courtroom to address the verdict forms, the district court asked the lawyers if they had any statements to make. Defense counsel said he had "nothing for the record." Thereafter, counsel and the court discussed whether the jury could redeliberate and whether its "unanimous agreements" on the three counts could change. The district court observed the "agreement" could change because there was no verdict until the jury signed the verdict forms and was polled. Lerma's counsel did not

retry the defendant. Here, Lerma expressly requested the mistrial. The question of "implied consent" to a mistrial is not before us, and we express no opinion on the court of appeals' holding in *Hunter*.

12

object at that point. Further, once the jury returned, Lerma did not object to the mistrial declaration on all counts or explicitly object to declaring a mistrial. This case is different from *State v. Long*, 562 N.W.2d at 294–95, and *State v. Gouleed*, 720 N.W.2d at 799–801, in which we recognized that a defendant could object to a mistrial—even if they previously requested a mistrial—by taking some affirmative action to withdraw the mistrial request.[12] Here, Lerma took no affirmative act demonstrating his intent to withdraw his mistrial request. There is nothing in this series of events to suggest that Lerma withdrew his request for a mistrial on all counts.

4.

Fourth, Lerma argues he did not need to immediately object to the mistrial declaration because the district court provided him explicit permission to object to retrial at a later omnibus hearing. He cites the district court's parting words—after declaring the mistrial—that the attorneys "can take inventory of where you're at, where you want to go, I'm not going to ask for any decisions at this point . . . ." as evidence of the district court's intention to allow Lerma to challenge the mistrial declaration in a post-trial motion.

---

[12] In both *Long* and *Gouleed*, the defendants originally requested mistrials. *Long*, 562 N.W.2d at 294; *Gouleed*, 720 N.W.2d at 797. Those requests were denied and the trials continued. *Id.* Later, however, the district courts sua sponte declared mistrials. *Long*, 562 N.W.2d at 295; *Gouleed*, 720 N.W.2d at 799. In both cases, the defendants changed their positions by expressly requesting trial continuance after the district courts explained they were going to declare mistrials. *Id.* We evaluated Long's and Gouleed's double jeopardy claims under the manifest necessity standard. *Long*, 562 N.W.2d at 296; *Gouleed*, 720 N.W.2d at 800. Unlike Long and Gouleed, Lerma did not make a continuance request nor object to the district court's mistrial declaration. Absent an explicit action we will not infer withdrawal of a defendant's consent. The clarifying conversation on the record in this case does not qualify as an explicit action.

In making this argument, Lerma relies on *State v. Large*, 607 N.W.2d 774 (Minn. 2000). *Large* is distinguishable. In *Large*, the jury acquitted the defendant on three counts of criminal sexual conduct and could not reach a verdict on the fourth count, which required the State to prove multiple instances of sexual misconduct. *Id.* at 776. The State requested a mistrial on the deadlocked count and the court asked for the defense's position. *Id.* at 777. The defense requested time to consider the issue and the court "reserve[d] judgment" on the mistrial motion, to give "both parties a chance to address the issue." *Id.* At a later hearing, the defendant argued that, following the other acquittals, the State no longer had sufficient evidence to prove multiple instances of sexual misconduct. *Id.* at 777–78. The district court agreed and granted the motion to dismiss the fourth count for lack of sufficient evidence. *Id.* We concluded the district court's decision was a judgment of acquittal on the merits and found that double jeopardy barred reprosecution. *Id.* at 780.

The circumstances that allowed Large to bring a post-trial objection to the mistrial request are not present here. Unlike *Large*, the district court here did not reserve judgment on the mistrial motion; it declared a mistrial on all five counts. Lerma did not make a contemporaneous objection to the mistrial nor did his attorney request more time to consider a challenge. Equally critical, Lerma did not bring a post-trial motion claiming a double jeopardy violation; he brought a pretrial motion before the second trial to bar reprosecution. Lerma did not have the district court's permission to bring an objection at the later hearing after the mistrial declaration, and his motion to dismiss did not preserve an objection to the mistrial.

5.

Fifth, Lerma points to Minnesota Rule of Criminal Procedure 26.03, subdivision 19(4)(f), as another path for us to conclude that he preserved an objection, and thereby did not consent, to the mistrial. Subdivision 19(4)(f) provides that "[o]bjections to [jury] instructions claiming error in fundamental law or controlling principle may be included in a motion for a new trial even if not raised before deliberations." The plain language of this rule allows a defendant to raise a post-trial objection to jury instructions *in a motion for a new trial*. Lerma's argument is flawed for the simple reason that Lerma did not seek a new trial (and does not want a new trial). Rule 26.03, subdivision 19(4)(f), is inapplicable to Lerma's claims.

In summary, Lerma requested a mistrial on all five counts and neither withdrew his consent to the mistrial nor objected to the district court granting a mistrial. The district court granted his request in full. Under these circumstances, double jeopardy does not bar a new trial unless Lerma can establish that the district court intentionally provoked him into requesting the complete mistrial. The record does not support a finding that the district court intentionally provoked his request for a mistrial, which Lerma admits. Double jeopardy did not attach, and Lerma may be retried.

C.

Lerma presented an alternative argument that the district court committed structural error when it told the jury that a mistrial means the case will start over with a new jury before the verdict forms were complete. The typical remedy for structural error—which differs from other error in that it is not subject to appellate review for harmlessness—is a

15

retrial. *See Arizona v. Fulminante*, 499 U.S. 279, 307–08 (1991); *Pulczinski v. State*, 972 N.W.2d 347, 358 (Minn. 2022); *see also State v. Harris*, 533 N.W.2d 35, 36 (Minn. 1995) (affirming district court's denial of an order barring retrial on the basis of double jeopardy after a reversal due to prosecutorial misconduct at trial, stating that "the double jeopardy clause in such circumstances [reversal on error] does not bar retrial"). Consistent with the relief granted in those cases, Lerma will receive a new trial. In other words, even if the district court's conduct in informing the jurors about a potential mistrial and its consequences constituted structural error, Lerma is already getting the remedy available for that error.

Lerma seemingly claims that the unique circumstances of his case compel a unique structural error *remedy*—not a new trial, but a prohibition on retrial. His argument flows, in part, from the assertion that there was no manifest necessity for a mistrial on at least some counts because, by explaining mistrial and its corollary that a new jury would decide the case, the district court impermissibly provided Lerma's jurors a free pass to avoid their otherwise-difficult constitutional responsibility. Based on our analysis and resolution of the case—the conclusion that Lerma consented to the mistrial and Lerma's concession that the government did not provoke this consent—we do not reach the question of manifest necessity for a mistrial that underlies Lerma's demand for a unique structural error *remedy*. Accordingly, because Lerma's argument for this unique remedy is flawed on the facts of his case, and because Lerma is already getting the remedy to which he would be entitled if we found the district court's conduct in answering the jurors' questions about mistrial and its consequences constituted structural error, we need not reach the issue of whether the

16

district court committed structural error. We observe, however, that the district court's express communication to the jury during deliberations about the potential for, and implications of, a mistrial raises potential concerns about the fairness of the trial. We caution district courts to avoid such communications in future cases.

\* \* \*

Because Lerma requested and received a mistrial on all five counts and cannot prove the government provoked him into doing so, double jeopardy has not attached and he may be retried.

**CONCLUSION**

For the foregoing reasons, we affirm the decision of the court of appeals.

Affirmed.